May it please the Court, Eden Anderson on behalf of Appellant Kelly Services. I'll reserve three minutes for rebuttal. I plan to first address the delegation issue and then the scope of the party's arbitration agreement. This Court has already held, including in the employment context in Brennan and in Galilee, that when an arbitration agreement incorporates AAA rules, the parties clearly and unmistakably delegated gateway issues to the arbitrator. And that's because AAA's Rule 6, as your sister circuits have noted, is about as clear and unmistakable as language can get. Counsel, does Mr. Ruiz's sophistication matter? Mr. Ruiz's sophistication should not matter. Under Section 2 of the FAA, arbitration agreements are placed on equal footing with other contracts and can only be based on generally applicable contract principles. And there is no generally applicable, I'm unsophisticated contract defense. And adopting such a rule and applying it uniquely in the context of arbitration runs afoul of the FAA. Rule 6 is clear. Before we get to Rule 6, I guess I want to understand the scope of, you can see that Brennan was trying to understand its contract, specific contract under California contract law, whether that cleared a heightened, clear and unmistakable for Federal Arbitration Act contracts. It was dealing with federal California contract law. We're trying to read this under California contract law. I mean, there's no distinct, the contractor and the contractor, Brennan, have the same language. Well, does it matter? They don't, do they? So Brennan says that any controversy or claim arising out of this agreement shall be settled by binding arbitration in accordance with the rules of the AAA. This doesn't contain that language. It says that I agree to use binding arbitration. The AAA doesn't come in until after the coverage and exclusions clauses. Well, the contracted issue in Brennan was an employment agreement. Right here, we have a standalone arbitration agreement and both agreements incorporated AAA rules. So it doesn't matter where the AAA rules are incorporated? Absolutely not, Your Honor. There is, you know, the only requirement for a delegation clause is that it be clear and unmistakable. And then there's a conscionability requirement. But there's no rule that it has to appear in a particular place or in a particular order within an arbitration agreement. Well, the only rule is we're trying to reach a reasonable reading of whether each particular contract meets this. And in Brennan, the AAA incorporation happened in a different section of the contract than the agreement to arbitrate. It only happens after the claims and exclusions. Why isn't this more like Mondragon, which from the California court is more controlling? Well, first, the facts in Mondragon and the arbitration agreement there were completely different. Of course, in both cases, here and there, we have an incorporation of AAA rules. But in Mondragon, there was language that specifically undermined the delegation and made it ambiguous and not clear and unmistakable. Here, we don't have any such language undermining the incorporation. Okay, walk me through that. So I see in section four of this agreement, it says the employment dispute resolution of the AAA will apply. In Mondragon, the parties will use the AAA for arbitration. So that looks a lot alike. Yeah, that's the similarity. But in Mondragon, there was a bunch of other language elsewhere in that. What's the next sentence of that, if you recall, in Mondragon? You know, I would have to pull up. That's something that AAA rules will explain how to file a demand for arbitration. Right. So it suggests that the rules are used for a limited purpose, not for the whole arbitration. Correct. And there was even addition, I don't have all the language of the Mondragon agreement right in front of me, but there was additional language elsewhere in the agreement that also undercut the incorporation of the AAA rules. I mean, the two cases are just factually very distinguishable. Incorporation of the AAA rules for this purpose, right? We're talking about whether it's the incorporation of the AAA rules as to arbitrability questions, or who decides, the third order question, right? Correct. So the question now, though, is whether the language of Rule 6 is less clear when a party who agrees to it is not sophisticated. And this court should answer that question just as the majority of its sister circuits and the majority of district courts in this circuit have, and include that party sophistication is not relevant to delegation. And there are four reasons why this should be so. First, a party sophistication rule runs counter to the Supreme Court's decision in the first options case, which describes the clear and unmistakable standard, as I quote, as an objective one. How a party subjectively perceives contractual language should not affect the plain meaning of a contract. And as we already discussed, the second reason is that an I'm unsophisticated contract defense would be preempted by the FAA. And third, Mr. Ruiz, in signing his arbitration agreement, which was an entirely voluntary agreement, expressly acknowledged, and I quote, that he had carefully read this agreement and I understand its terms. He should not, after the fact, be able to disclaim that understanding. Courts don't have the power to relieve people from their contractual commitments. If we were to disagree with you and say that sophistication does matter, do we have to accept that he is unsophisticated? No, your honor. There was clear error in the district court's finding on that. Mr. Ruiz did not even submit a declaration in opposition to the motion to compel. The district court reached a finding of lack of sophistication based only on evidence that Mr. Ruiz worked as a temporary worker and on stereotypical assumptions. We know nothing about Mr. Ruiz. But you'd concede that the district court did make a finding that is subject to clear error. It's just that it was clearly erroneous. We do concede that there is a factual finding, but our contention is that it was clearly erroneous and that the district court flipped the burden of proof and improperly placed it on Kelly to establish sophistication. As this court's decision in the Patrick case makes clear, it is Mr. Ruiz's burden to establish his lack of sophistication. And as I just said, he did not even submit a declaration in opposition to the motion to compel. Can I ask an unrelated question? If we were to agree with you that the arbitrator needs to decide the scope of the agreement, do we need to reach the class waiver question? Or does that all go to the arbitrator? No, no. If we went on the first issue on the delegation issue, you don't need to do anything else, your honor. My final point on delegation is that AAA's Rule 6 was adopted specifically in response to the first option's decision to create a clear and unmistakable delegation, and adopting a party sophistication rule would deprive countless parties of the benefit of their bargain. That's the one question I had. Brennan, the one big distinction with Brennan is the fact that Brennan referenced one set of AAA rules while this one references the AAA rules effective at the time of filing. Doesn't that change the calculus at all? It doesn't, your honor. This Court has already, in the Oracle America case, decided this exact same issue in the context of in-situ rules and held that that exact same language didn't matter. And AAA Rule 6 has been on the books, like I said, since shortly after the first option's decision, and the substance of the rule as it existed when Mr. Ruiz signed his arbitration agreement is no different than the substance of the rule as when he filed suit in 2023. Turning to scope, the District Court erred in permitting Mr. Ruiz to use 17-200 to circumvent his arbitration agreement for four reasons. But before I get into those four reasons, it's important to emphasize two guiding and binding principles. Under U.S. Supreme Court precedent, including the first options in LAMPS Plus cases, under the FAA, if there is ambiguity about the scope of coverage of merits claims, it must be resolved in favor of arbitration. As the Supreme Court explained in LAMPS Plus, contra profferentum is not an interpretive tool. It is instead a tie-breaking mechanism of last resort that has no application when the FAA governs, as here. And the second principle, when a carve-out from arbitration is at issue, U.S. Supreme Court precedent, the Circuit City case, mandates that the carve-out be construed narrowly. These principles are paramount as the agreement's language is considered, and they were entirely ignored by the District Court. Why are those principles true under the FAA textually? I don't see that in the text of the FAA. What I understand the FAA to say is that we should just treat arbitration clauses equally and not give it, you know, disfavor, but not also give it favor. And you're advocating for favorable reading. You know, Your Honor, I'm not sure that I've thought about that enough to answer that question. What I can tell you, though, is that it's binding U.S. Supreme Court precedent that those two principles apply and guide this Court's analysis. Well, there's an extension from that, so I'm not sure if those are all completely binding, but go ahead. I know. As to the four reasons why unfair competition means common law unfair competition, first, Mr. Ruiz filed a 17200 claim in arbitration. That's an admission. He understood a 17200 claim to be a covered claim. Well, no, it isn't. It's an admission that he decided that strategically that that was, that those were covered in one way. I don't think we want to get too much into kind of admissions or judicial swap. Both parties don't have the cleanest hands in terms of this piece. So why don't we get to the, I mean, unfair competition claims. You've just said that, you know, what's ambiguous about that? This is an unfair competition claim. Well, I mean, the agreement can be interpreted in two different ways. It's ambiguous. He there's a clear ambiguity that has to be resolved in favor of arbitration. And I disagree with Your Honor that the filing of a 17200 claim in arbitration is irrelevant. I mean, he didn't even need to allege that claim in arbitration. It was entirely a derivative claim that served no purpose. So the fact that he and his counsel alleged that in arbitration shows that it's a covered claim. Do you want to save the rest of your time for rebuttal? Yes, Your Honor. Thank you. May it please the Court. Jenny Basinger on behalf of Appellee Raul Ruiz, Jr. I want to first address a point that counsel just made with respect to ambiguity and ambiguities needing to be resolved in favor of arbitration. That actually, as the Court noted, is not found in the F.A. anywhere. And in fact, what the purpose of the F.A. was when it was enacted was to place arbitration agreements on equal footing with other contracts. And as we all know, California or State law interpreting contracts governs this Court or guides this Court in interpreting the arbitration agreement here. But I guess some limits to that, at least, is that first option seemed to suggest that the rule of construction that you would benefit from here, that it has to be clear and unmistakable, is the flip side of the Court's rules of construction that your friend noted. In other words, I think there's language in there that says, whereas with respect to scope, we'll kind of put a finger on the scale of arbitration, with respect to who decides arbitrability, because it's technical, it needs to be clear and unmistakable. So I get that there's not the F.A. itself textually just kind of says do contract law here. But the Supreme Court seems to suggest we've got to take both of those at once. And I think the F.A. language itself is controlling. And also, when it comes to contract interpretation, we are always looking at trying to identify the mutual intention of the parties. That is our overarching goal every time we review any contract, including an arbitration agreement. And I think with the clear and unmistakable standard, contextually where that arises, and the reason that the U.S. Supreme Court imposed the clear and unmistakable standard when we're talking about arbitrability, is because it recognized that determining who makes that initial determination of arbitrability is something that parties don't consider. It's not something that's on their minds. I think the Court referred to it as a rather arcane consideration. And because of that, it's likely from a practical standpoint that the parties weren't intending to change the normal rule. But before we leave your opening point for now, what's your response to the fact that Mr. Ruiz availed himself of arbitration with respect to UCL claims? Well, you can voluntarily submit any claim you want to arbitration. And if a party then opposes arbitration and says that it's not agreeable, then that's fine. But after the fact, you can agree to arbitrate any claim you want. And in this instance, it was not a derivative claim. It's a claim to sick leave pay claim that can only be brought pursuant to the UCL on an individual basis under California law. And that's why it was brought that way, because the other claims they're just relating, I mean, they are and they aren't. They're wage and hour claims and that they arise under the labor code, but it was literally related solely to a sick leave issue, a failure to, an alleged failure to provide sick leave, and then a wrongful termination in retaliation for using sick leave. And there's no private right of action under the sick leave law in California. You have to raise it through the UCL, and that's why it was raised that way, because factually it was identical to the claims that were already conceitedly subject to arbitration. Why isn't this case controlled by Brennan? Because Brennan itself expressly limited its reach to situations identical to Brennan. And also there are critical differences. It said that it didn't reach whether or not sophisticated versus unsophisticated parties, right? That's the main limitation it was talking about. Correct. And also... But so your argument has to be that unsophisticated parties, Brennan doesn't apply to unsophisticated parties. Yes, factually it doesn't. And the court, this court expressly said that it's limiting its... It's limited, yeah. Determination to... Okay, so if you're going to adopt that rule, how does that not violate the FAA? That if you're dealing with our delegation clauses, if you're unsophisticated party, then a different rule applies. I think firstly, we don't even need to get into that because of differences in Brennan. Right. But that's the main difference in Brennan. So let's just address that one first. Well, actually the more fundamental differences are that the language in Brennan in the arbitration agreement and the delegation clause are different in significant ways that actually...  I'm just saying, I don't think Brennan says that those textual differences that you're legally salient. What they did say is that unsophisticated versus sophisticated may be legally salient. Well, the court didn't say that textual differences are salient, but if it's limited to that holding and the textual differences further indicate that there's a lack of intention. Two further facts for sake of this argument now that they are the same arbitration clause and we're just dealing with the sophisticated versus unsophisticated. How does that survive the FAA? In California contract interpretation, when you're looking at intent, sophistication of the parties can illuminate that issue. And so in any contract... Across the board in every contract? Yes. Subjective intent of the party? It's not subjective intent and I think that's the distinction I'm trying to make. I'm not saying because it's subjective intent... Subjective understanding? What is it? Reasonable expectation, which is something that oftentimes is infused in California contract interpretation in the insurance context. And I think in LAMPS plus, the US Supreme Court actually said when discussing... So my question then is, under California contract law, are unsophisticated parties always treated differently? No, but the sophistication of the parties can illuminate what the intention and reasonable expectations of the parties are when engaging in contract interpretation under California law, which is what we're doing here, engaging in contract interpretation. Do you have a case for that proposition? Sorry, I know I caught you a little off guard. That's okay. I don't. Off the top of my head, I can tell you that there are cases in the insurance context that address the issue of reasonable expectations routinely. And in fact, it may actually be one of the cases with the unfair competition issue that is an additional issue in this case, where in interpreting the scope of unfair competition in those contexts, on those contracts, the reasonable expectation of the insured is what  Okay. So if you want to make the argument of why Brennan is distinguishable based off of the terms of the arbitration agreement. It's distinguishable for all of the reasons that I think the Court identified earlier, which are that the way that the agreement proceeds lends itself to a logical interpretation that the arbitration rules or where the incorporation by reference occurs doesn't even get triggered until after an initial determination about arbitrability has been made. And therefore, a reasonable person reading it could say, oh, I see these apply once we're in the arbitral forum. And therefore, it doesn't apply here. So are you making that argument based off of the titles of the sections? No, just the way in which they proceed, but also the direct language. What do you mean by that, though? They proceed in an order fashion to me as far as how things are going to be determined. First, we have an agreement to arbitrate, then we have exclusions, and then And then rules. When we're in arbitration under this agreement, it will be resolved. There are certain rules. It seems to follow, I don't know, it seems under your agreement, it seems you have the agreement to arbitrate, there's exclusions to it, and then what are the rules? And one of the rules is that the arbitrator will decide the scope of the agreement. That just seems to flow logically. And it doesn't seem to logically follow in the same way to me. But more importantly, there is another term in the arbitration rules section that lends itself, just as was the case in Mondragon, to a determination or interpretation that the incorporation by reference was not intended to include and define the authority of the arbitrator. And that is the final sentence of section 4, which specifically says the arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law. Well, why is that? That was a response to state law that requires that language, right? But that's already in the arbitration rules, in the AAA rules. Well, it's just, I mean, it's built in suspenders. It's just saying that there's a state law that mandates this, otherwise it's found unconscionable, right? True, but generally speaking, you don't read contracts under California law to have any superfluous language, and that language is completely superfluous if the incorporation by reference of the AAA rules was intended to define the authority of the arbitrator, because the authority of the arbitrator to do this exact thing that's then enumerated. Or it's a safe mechanism to assure that the contract is not found unconscionable. Okay, then there's two reasonable interpretations of the contract language, which then make the delegation clause itself ambiguous. But then we go to the, then it goes to arbitrator. To the what? Then it goes to arbitrator if it's ambiguous. It goes to the arbitrator if it's ambiguous? Yeah, if you're saying it's ambiguous, then the arbitrator can decide, and then the courts can move in afterwards. No, if it's ambiguous as to what the delegation clause meant, which I think you just indicated an interpretation, your interpretation of what those additional languages or additional words mean, I put it, posited an alternative explanation as to what inclusion of that final sentence means. Isn't that what the delegation clause is all about? If there's a disagreement about the terms of the agreement, then the delegation clause allows the arbitrator to decide that in the first instance. But this is disagreement about whether the delegation clause, what the delegation clause means or doesn't mean. And that's a threshold issue. That's a third order question that's covered by the clear and unmistakable test. Correct. And that is why I think incorporating by reference in general adds an additional layer of confusion as to what the parties intended. And whenever there's any level of ambiguity about what the parties intended with a delegation clause, the court needs to be the determiner of arbitrability. And I think there's myriad reasons that there's ambiguity here that have just been identified. And that's why the delegation clause. Well, can you point me to where in Brennan we should look to find the best statement of limiting principles? It's a little odd whenever we're doing any arbitration case, because we're not the ones who say what California contract means. We're trying to figure out what California courts would think it means. But there is this federal clear and unmistakable overlay. And so I'm trying to figure out which parts of Brennan are binding on us or self-limiting. I don't know that in this factual context any portion of Brennan is binding on this court, because the factual circumstances are entirely different, and the court limited itself to those specific factual circumstances. But, I mean, there's an argument, I think, that Brennan held that an incorporation of the AAA rules is clear and unmistakable evidence of delegation of arbitrability. And it also expressly stated repeatedly that it was limiting that holding. But did it limit it in any other way aside from the sophistication question you discussed with Judge Bumate? I'm sorry. Maybe that wasn't where you're going.  No. Some other way that it was limited? Because let's assume away the sophistication issue. On the terms of the contract, why doesn't Brennan control? Why isn't it holding that any incorporation of AAA leads us to a clear and unmistakable delegation? Well, I think no court since then has found that any incorporation leads to that. Courts have routinely found when there's... Well, it only takes one case, right, for us to have to follow it. I don't think there's binding courts that have said that. I think there's actually... In fact, whenever there's ambiguities, so if there's, for example... And I don't know a case off the top of my head, so I apologize for that. But for example, when there's a subsequent clause that identifies or recognizes a court could make a determination about enforceability, then, okay, the delegation clause is now ambiguous. We can't enforce it because it's no longer clear and unmistakable. That happens with the incorporation by reference also. So it's not just any time you incorporate by reference, necessarily there's an enforceable delegation clause. You're still looking at whether, in the context of the contract you're dealing with, that incorporation by reference events is a clear and unmistakable intention to delegate this rather arcane issue of who decides arbitrability to an arbitrator and depart from the normal expectations that everyone... I mean, the US Supreme Court recognized. The normal expectation is you would expect that a court would make these fundamental foundational decisions. Right, but I guess, again, now that the question regarding incorporation of the AAA rules is squarely before us, we hold that incorporation of AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability. In the abstract and in the absence of something that counters that, like the factual distinctions that I've just asserted a moment ago about... But the agreement contains an incorporation of the AAA rules. It does. It contains an incorporation of future AAA rules. And as I was positing earlier, just I think a moment ago, the fact of incorporation by reference in general infuses an additional level of confusion to contract interpretation. Sure, but that piece has been resolved by... That didn't stop Brennan from reaching the holding that it did. So it has to be something else. What is it? That the facts of the contract here... It's a different contract. Correct. And in fundamentally important ways that I think I identified. You are out of time unless you have a wrapping up sentence. Go ahead. Okay. Thank you, counsel. Your Honors, I don't see any material distinction between the language at issue here and in Brennan. This agreement very clearly states that the employment dispute resolution rules of AAA will apply. How far does this go? I mean, this is the flip side of the question. Brennan purports to state a very broad rule. Any incorporation of the AAA rules, if it's in a footnote in small type that the state courts have said is usually not sufficient, it can't mean any incorporation of AAA rules. I think the issue you're raising is one of procedural unconscionability. Obviously, if you bury it somewhere or if you have a 50-page arbitration agreement and it's in small type, that's an issue. What about incorporation of AAA rules for limited purposes, which I take it to be your friend's argument. For the limited purposes of once an agreement to arbitrate, once an arbitral claim has been brought, then these will... I don't even understand her argument, because that's the whole purpose of incorporating AAA rules, is to delegate that issue to the arbitrator. Not only in California, but in any state in the Ninth Circuit, parties are not free to incorporate for limited purposes of AAA rules once they incorporate the AAA rules, according to Brennan. If you want to add language saying, okay, well, we're incorporating this rule, that rule, that's fine. That's not what we have here. For which purposes, right? If you wanted to have the agreement that plaintiff says that they have, what else would you have to say? In other words, if we go to arbitration, AAA all the way, fine. You might say only the procedural rules will apply in arbitration, some limitation like that. What about Moondragon? Do you think that that was rightly decided? That seemed to be pretty reasonable to me. Moondragon, the dragon. Moondragon, going back to your question, there were two key distinctions in language there. There was a savings clause that referred to a court deciding the enforceability of the contract, which directly undermined the earlier language. Those are factual distinctions from Brennan that could take us out of this world, Brennan's world. Exactly, Your Honor. And the last point I want to make on this party sophistication rule is it's just an unworkable test. I mean, where do you draw the line as to who's unsophisticated or who's not? Does it turn on IQ or educational level or income? And how does a party that's contracting even know the answer to that question in advance? It's an unworkable test, and a party-by-party assessment would undermine contract interpretation. Okay, thank you, counsel. This case is submitted, and we are adjourned for today.
judges: BUMATAY, JOHNSTONE, ALBA